Good morning, Council. Welcome to the Ninth Circuit. Today, we have a couple cases that we're having argument in, and we have several cases that have been submitted without argument. Before we start, I'll go ahead and read off the cases that have been submitted as of today without argument. Those cases are Case 21-35836, Barton v. JMS Associate Marketing. Case number 21-36043, Ross v. Commissioner of Social Security Administration. Case number 22-35052, Cruz v. Kijikazi. And case number 22-35287, Schlafs v. Kijikazi. The first case that we'll be having argument in today is C.M.E. v. Shoreline School District. We have 15 minutes per side. For the appellant, Council, we have, please let us know your name and how much time you plan to, you've done this before, but how much time you have to, you want to reserve for rebuttal, and we'll go ahead and start. Thank you, Your Honor. May it please the Court, Samir Deghasan, pro bono counsel on behalf of plaintiff C.M.E. I'd like to reserve four minutes for rebuttal. I'm sorry, say one minute? Four minutes. Four minutes. I'll try. Although the facts and procedural history of this case are complicated, the errors in the decisions below are ultimately straightforward. The ALJ in this case held that on the summary judgment standard, even if you construe every fact in favor of the plaintiff, the school district was permitted to insist on an interview as part of the student's evaluation. Nothing in the ALJ or district court opinion supports that conclusion. It's important to note this was a student who had been receiving IDA services for over 15 years and was simply requesting that he participate in three high school classes while being otherwise home-scored, which is exactly what he'd been doing for the previous semester. It's also important to note that there had been a transition assessment for this very academic year, the 2019-2020 academic year that had been conducted in January 2019, without any interview. So it never really made any sense that suddenly an interview was required for this same academic semester because she was asking for less, just three high school classes. And parent consistently explained that there were fundamental problems with this interview. First, that the interview would be traumatic for her child. Second, that in light of her child's processing disorder, the interview was not going to yield useful information. In fact, it was just going to get misleading information. And third, that there was already voluminous information in the record to perform any initial evaluation. The school district says that she objected separately to the interview and to the so-called age-appropriate transition assessment. And she objected to the age-appropriate transition assessment on the ground that such assessment had already been done. It was not necessary to another one. So they say, well, really, she objected to the age-appropriate transition assessment and she did not have a right to do that. And therefore, so what's your response? Right. I mean, I don't think it was ever presented to her as a separate thing. And the key document to look at is the prior written notice of September 18th, 2019, which is at ER 179. And there where it's describing what the transition assessment is, it says age-appropriate transition assessment consisting of a structured interview of student with questions about his interests, strengths, preferences, and needs. And if you look to the bottom of the page, when it describes the reason why her objection was rejected, it says the district considered revising the evaluation plan to accommodate parents' request to eliminate the age-appropriate transition assessment and or interview of the student. And then the explanation given is that the assessment is required by the IDEA. So the school district bundles the two things together and was basically saying the assessment is the interview. And the school district never, ever offered up an assessment without an interview. What parent was ultimately asking for is, look, an assessment is just an output. If you want to check the box saying assessment, you know, go ahead and do it. You know, she says at ER 122, you can use prior information. So, Counselor, you agree that the assessment is required. So if we were to conclude that she rejected the assessment, which included an interview, right? But like, what do we do with that? If we were to conclude that she rejected the assessment, she also rejected the interview. So sometimes I think there's language assessment and the interview. But what do we do with that? Because if she completely rejected the assessment, was the school district required to sit there and say, well, you know, you rejected the assessment, which includes interview. But what if we don't interview? I could see the school being a little bit unclear about why she's rejected the assessment altogether. So there's no reason to ask her about just the interview. Right. I mean, I don't think you could conclude on this record that, you know, there's no question of fact as to whether she would have rejected the assessment separate from the interview. But either way, I don't think it actually matters because what we know is that they did impose the interview requirement. And instead of giving up on that, they then went to the AOJ and they specifically said in their request for relief in front of the AOJ, and this is at ER 225, the district requests that the AOJ enter an order overriding parents' refusal to consent to the district's evaluation of the student and authorizing the district to proceed with the initial evaluation as proposed. And that's referring to the September 18th prior written notice, which describes, which includes the interview and describes the assessment as the interview. And then the AOJ's decision, and this is at ER 81, it specifically finds the district may conduct an initial evaluation of the student as set forth in the prior written notice dated September 18th, 2019. So whether or not she would have separately, you know, rejected the transition assessment, they did impose the interview requirement independently. They never offered up an option without it. So let me, let me, I have a few questions about the status of this case. So as I understand it, the district of the district's first argument is, well, this case is moot because, um, he's aged out of any, uh, compensatory education, any IDA benefits, correct? That's their first argument. That is their first argument. As we explained in our reply brief and in our opening brief, there's still compensatory education. That's something that all, here's what I don't understand at this hearing. It was all, it was the school district that appealed, correct? To the ALJ. Correct. Right. And the only thing before the ALJ was the school district's complaint. Is that correct? The thing before the ALJ was whether or not the school district was allowed to override the consent and basically impose what was described in that September 18th. So in other words, a FAPE issue was not directly involved at the administrative hearing. I think a FAPE issue, no, I don't think so. I think a FAPE issue was involved. How does the FAPE work into this when there was no complaint? The parent's separate FAPE dispute was raised in a different case, if I remember correctly. That was a different FAPE dispute. That was a FAPE dispute about whether the prior IEP, that was the IEP from January 2019, which would have sent him to the transition program, whether that was adequate. This is a totally different IEP they're discussing. This is an IEP, you know, the IEP she was proposing, which was three high school classes in the context of an otherwise homeschooled education. So there's no connection between those two. Well, our case law seems to say that you have to look at the, what are the issues raised in the complaint before the ALJ? Right, and I think when you... And the only issue really raised here was the, can the school district override her lack of consent? But the imposition of this interview requirement was the thing which basically, it acted as sort of a condition on the grant of FAPE because no one disputes that he was entitled to IDA services, you know, he didn't get anything afterwards. And the reason why was because there was this potentially traumatic interview requirement attached. And so in her, just to add one thing, because I think it's significant, if you look at the record, at ER 96 in her briefing before the ALJ, she explicitly asks for an order that the school district conduct an initial evaluation with the consent parameters that she approved and that he be granted access to the three high school classes for 2019 to 2020. So that is her... That is her request, which is for an IEP. And so she's asking for that specific kind of education. And then in her briefing, she's, you know, described it explicitly in terms of FAPE. So she says, is it ER 84, for example, this case is an effort to delay and deny student of his FAPE and the specially designed instruction that he's qualified to receive under the IDA. At ER 92 in her briefing, she says that this, what the school district is doing here by consent override is denying student his FAPE. At ER 93, she says it's denying him an educational opportunity and even cites the NGREF case. So I think as a pro se litigant, she's done an awful lot to put the FAPE issue in front of the ALJ. And then what the school district did was obtain an order that said, you know, the school district is allowed to have this interview requirement as basically a threshold. And so she's then given this kind of Hobson's choice. She either submits to the interview or she walks away and her son doesn't get FAPE. So, you know, this is a procedurally quirky case in that the school district initiated the due process hearing, but she did what would be the equivalent of a counterclaim, which is to say, you know, what you're doing here by imposing this interview requirement is an effort to deny FAPE. Please do the, you know, I want an order that says instead of that, he can go into class and get these three classes. I didn't look up the procedural aspects of this, but is there an opportunity for, like in this case, the parent to file a counterclaim before the ALJ? We looked into this, Your Honor. I'm not sure that there is. And the other thing to sort of note about this is that she was the initial party that went to court. You know, so if you sort of, normally when you, this is really the administrative proceeding is kind of one thing. And then she's sort of the plaintiff that goes to court. And in court, she specifically in her motion for summary judgment, which this court routinely construes as an amendment to the complaint, she specifically asked for the remedy of compensatory education because at that point, student is almost aged out. And so she specifically says, and this is at ER 29, that he should have compensatory education and enumerates all of the things. So again, for a pro se litigant, I think at every opportunity, she's done everything she could to put this FAPE issue in front of the court. And, you know, it can't sort of be the case that because she didn't get to the courthouse first, you know, this is now off the table and she has no opportunity to appeal. I mean, if she tried to file a separate suit, I think very clearly the AOJ would say, I've already decided this. It's precluded by the fact that I said, as a threshold here, you have to submit to the interview requirements. The only place she could challenge the interview requirement that was denying her son's FAPE was in this proceeding. And she consistently did that. Let me ask it this way. What is unreasonable about the district requiring the interview? I understand that her position is that the prior interview was traumatic. I have trouble seeing that that question is really teed up very well or answered in the AOJ's decision. But it's implicit that the requirement for an interview is reasonable. So people object to things all the time, like this is hardship, da-da-da-da-da. Well, what is unreasonable about the school district saying, well, we don't think it's as traumatic as you think it is? I mean, I think that is a question of fact. I think it was teed up before the AOJ, and the AOJ didn't really answer it. But the AOJ seems to implicitly have answered it by saying you're required to undergo the assessment and the interview. Well, the AOJ seems to say you can't selectively consent. And so, you know, by rejecting some aspects of this, you're really rejecting the entire proposed initial evaluation, which is fine as far as it goes. But that doesn't mean that every condition is reasonable. Well, but the AOJ very specifically said, required to do the assessment and the interview. Right. And I don't think that you can say that on this record, it is that no reasonable fact finder could find that, in fact, the district was unreasonable. And I'll just point to sort of three pieces of record evidence that are not being discussed, that were never discussed by the AOJ or the school district. One is that already, as I mentioned, already being an IEP for this exact year with a transition assessment, that's in the record at 141, 142. If you look at those pages, that's a transition assessment for the 2019, 2020 year. So there's at least a question that needed to be asked to the school district. Why do you need an interview when for this exact academic year, you were already able to do a transition assessment without an interview? And I realize I'm taking you into the time you'd hope to save for rebuttal, but maybe the presiding judge will give it to you anyway, despite my taking it away from you. We'll see. What's really at stake here? Let's assume that the request was made so that even though he's aged out, he can get the compensatory education. I mean, what's your client asking for from the school district? It seems to me fairly small. It's fairly small, Your Honor. She's only been asking for the equivalent of access to three high school classes, and the school district is taking... And for how long? For one year? Well, I can look. So it's at ER 29, and the record is the sort of list. It's a very specific detailed list of all of the education that she asked for then. Maybe now she'd want something slightly different. I don't know, because time has passed again. But even if you look at ER 29, it's relatively small, and this has been a case that's now been going on for three and a half years, where the school district has been litigating to this health to stop the student getting three classes in the course of an otherwise homeschool education that he was receiving, he'd already received for a semester, and he just wanted to continue that for another year. Do you know, has this case gone to our mediator in the circuit? I don't know, Your Honor. I don't think so. I certainly haven't been involved in that part of the process. Thank you, Your Honor. Go ahead. Good morning. May it please the Court, I'm Lynette Bache, Attorney for the Shoreline School District, and with me today at table is Trish Campbell, the District's Director of Student Services. The Shoreline School District requested this due process hearing because it wanted to provide special education services to this student, and it wanted to do that in full compliance with the IDEA. But it didn't want to give what the parent asked for. Your Honor, that's putting the cart before the horse. Under the IDEA, evaluation drives placement. Placement doesn't drive evaluation. But you had a proposed placement. You wanted the student to go off to the community college. No, Your Honor. The district has not proposed a placement because the parent revoked consent for special education. Under the IDEA, the next step is an initial event. The school district did not propose that the student go to the community college? Prior to the parent's revocation of consent, that was the last placement proposed by the school district, and that placement has already been litigated, and it has been ruled that proposal of placement in the community transition program at Shoreline Community College following four years of high school offered the student an appropriate public education. The ALJ, who heard that case after the parent filed the complaint, did not grant the parent her requested relief of three high school classes. So can I ask a question about that? Because maybe I think your counsel on the other side said that there was a FAPE at issue in some other litigation, but that that FAPE was the prior FAPE. But I thought that it had been litigated whether or not the placement at the college was FAPE, and it had been concluded that it was, either by an ALJ or somewhere. Is that right? Correct, Your Honor. So how is that the prior plan, not this plan? The student was previously eligible for special education through June 2019, when the parent revoked her consent for the student to receive special education services. The parent then referred the student for evaluation, which is the first step in the process for qualifying a student under the IDA, and the statute requires that when consent has been revoked and a student returns to general education status, if a student is then referred for special education, the district must conduct an initial evaluation and develop an offer of FAPE. The case that the due process hearing that the parent requested pertains to the district's last offer of a free and appropriate public education when the student was still eligible during the 2018-19 school year. That IEP included placement for fall 2019 in the community transition program, but the parent revoked consent for services before the student could ever receive services under that IEP. So when the parent then referred the student for an initial evaluation, the district proposed the evaluation that is before the court in this case, and when the parent declined to consent to that evaluation, the district requested a due process hearing with the hope that it could evaluate the student and then offer a placement. At this time, the student was being homeschooled? Can you clarify what you mean by at this time? When the parent revoked consent, it was because the parent was going to homeschool the child. Is that correct? You'd have to confirm that with the parent, Your Honor, but that's my understanding. Didn't I read that? Ending. Following a parent's... Let me ask you, you know the record better than I do, I think. But at what point did the parent say, I'm going to homeschool my child? I believe in June 2019, Your Honor, but the parent also enrolled the student part-time in Shoreline School District to attend at least one general education class. And the parent has been very clear throughout the proceedings that she is seeking special education services from the Shoreline School District. Can a parent that's homeschooling their children also receive IEDA benefits? Yes, Your Honor. Under Washington state statutes, parents have the authority to enroll their student on a part-time basis. And Washington statutory scheme specifies that when a student enrolls part-time and is otherwise homeschooled or enrolled in a private placement, that student is served under an IEP, which includes the requirement that that IEP be developed consistently with the IDEA's procedural and substantive requirements. Is that what was going on here? Yes. Regardless of the student's part-time or full-time enrollment status, the district is required by the IDEA to conduct a complete and appropriate initial evaluation and develop an IEP based on that evaluation. The parent can then determine whether they want to enroll their student on a full-time or a part-time basis and access that offer of FAPE to a complete or partial extent. But if the student is seeking special education services from the school district in any capacity, the IDEA requires that the district start that process with a complete and appropriate evaluation. And that's where the district started. They wanted the assessment and the interview and whatnot. Yes. What I'm struggling with, to go back to this, it sounds like technically it's a separate proceeding and a separate plan that you'd be determined, as to where there was an administrative decision that the student would get a FAPE by going to this community college. And then there was this proceeding. But it just seems to me, it sounds like there would be sort of a conflict, because the only thing that keeps this case essentially from being moot, as I understand it, is, well, you could say that you could send it back and they could conclude that the student wasn't provided a FAPE and that they would get compensatory, get some sort of compensatory damage. But in my head, it feels a little bit like that would be inconsistent, even though it may be technically it's a separate proceeding. That would be inconsistent with the fact, at least in this other proceeding, it's already been found that the student, that he got a FAPE from, that he would have gotten a FAPE if he had gone to the college or whatever it was, the technical school. There was a conclusion that the student would have gotten a FAPE if he'd gone to the technical school, where the school district wanted to place him. The community transition program at Shoreline Community College. And yes, the ruling in the due process hearing that was filed by the parent was that the district's offered placement in the transition program provided the student with a FAPE. So what I'm struggling with is, if there's already been that conclusion, and admittedly that's a different proceeding than this one, but if there's already been that conclusion, it seems like the argument that this isn't moot, that we could send it back, the ALJ could go through and actually decide whether the student had gotten a FAPE or not, or was at least offered one, right? That would have to be inconsistent with that other, you know, in order to actually provide any relief to the student, it would have to end up like an inconsistent ruling. You have to say, over here you said the student would have gotten a FAPE if they had gone to this training, and now they'd have to conclude that they wouldn't have. Am I correct? Correct, Your Honor. The parent's attempting to collaterally raise an issue that has already been decided in the due process hearing. But they're saying they're not, because they're technically different periods of time or something, or they're different? Even if the parent were attempting to, before this court, raise claims regarding a denial of FAPE for a different time period, those claims aren't properly before the court in this case, because the parent has never filed a complaint raising those claims. But what I don't understand about your answer is that that's not what the ALJ said in this proceeding. The ALJ did not say, hey, this is collateral estoppel or already decided. The ALJ went ahead and said, no, well, this is a question as to whether or not the lack of consent can be overridden, period. So was that argument even made in front of the ALJ? ALJ didn't respond to it if it had been made. An argument for compensatory services, Your Honor? As I understood the answer you just gave to Judge Van Dyke, it is that this proceeding really is precluded by the adverse decision in the FAPE. Maybe that's not what you meant to say. The issue of whether the district offered the student FAPE for fall 2019 has already been litigated and would be precluded if the parent had pled it in this case, which she has not. I understand. But is this proceeding precluded based on that earlier FAPE decision? The issue of whether the district can conduct its proposed initial evaluation over the parent's not precluded. Any claims by the parent alleging that the district has denied student FAPE, if they were raised in the case she filed, they're precluded. And if they have not yet been raised, they're not properly before this court because they have not been pled. Maybe I'm having some version of the same problem Judge Van Dyke is having. Well, I understand that the other proceeding concluded that the proposed placement in the community college was an appropriate FAPE. That was an offer of a FAPE. Well, parent is now asking for something different. And this has gone off on the ground. Not that you've already been precluded from, I mean, you've already been offered something that's free and appropriate public education. But that, well, there's a consent override. Why is she entitled, why is parent entitled to this remedy, having lost the FAPE? Because you've not been arguing that one way or the other. Parent is not entitled to a remedy of compensatory services before this court because that claim has not been pled in this case. The only... So, what you're saying, in other words, along with the questions that I was asking about whether or not FAPE was raised in this case, your position, it wasn't raised in this case, but if it were, had been raised in this case, it would be collateral or stopped by the other case. Is that correct? Depending on what the parent would plead, Your Honor. The parent hasn't... Assuming it was the same. I don't know what else it would be, what else the parent could ask for, but assuming it was the same, the three classes, the three courses that she wanted, it would be collaterally stopped, wouldn't it? It certainly would, Your Honor. But because the parent hasn't requested a due process hearing before the court, I'm not exactly sure what she might have pled. What I understand you to be saying is you're reading our case law very strictly, which is that unless the complaint raises the issue, it's not before the ALJ and it's not before the court and it's not before us. Yes, Your Honor. Because the IDA is spending clause legislation, it does need to be construed strictly and it can't surprise the district when the statute itself says that a party may not have a due process hearing until the party files a complaint. It seems to me like you're also saying that even if the parent had raised it, they would be... I don't know if it'd be strictly collaterally stopped, but it'd be a very odd circumstance because you'd have to end up with a different conclusion in this than you'd have been reached in a collateral proceeding. Yes, Your Honor. Because I don't know what claim the parent would be raising here because the parent hasn't pled that claim. I can't say whether it's something that would be stopped. But either way, it's something that's not before the court. Something that hasn't come up. They're relying on the fact that the school district said, no, you're going to do an interview. But there is... It seems to me the school district does reach out and say, so you've raised these concerns about this past traumatic experience and basically said, please send us the medical records and then we'll have our psychologist evaluate what this interview should be like. And my understanding is the parent never responded. Is it your position that the school district would have insisted upon an interview or is it your position that the school district sort of... If the parent had followed through with this, you don't know what the school district would have done. Maybe your psychologist would have said, yeah, looking at this, this would be really traumatic. What if your psychologist had looked at this and said, wow, this would be really traumatic. Interview would not be good for the student. That would be a different set of circumstances, Your Honor. It would... The district attempted to explore that. They offered to review medical records or confer with a psychologist who purportedly diagnosed the student with PTSD. Had that revealed information that could have helped the district in planning an alternate path for this evaluation, that's a measure the district would have taken. I think the record shows that the district was very responsive to the concerns the parent specified. It revised its proposed consent paperwork in response to those concerns. It offered to have an outside agency that the parent had previously selected conduct the age-appropriate transition assessment. It offered to gather more information... I mean, the parent had a bad experience with that outside provider, so I'm not sure how helpful that is, but... Is that... The parent specifically objected to that outside provider, correct? Yes, Your Honor. Every alternative the district proposed, the parent was not interested in. Let me go back to something that I still don't quite understand. Assume that the parent had agreed to the assessment, including the interview. Was the parent or child entitled to the classes that she sought, assuming that she had consented to the interview? That's a decision that the IEP team would make after the evaluation is complete. An evaluation is not something that's conducted in order to rubber-stamp a placement that a parent wants. It's conducted to give the IEP team appropriate information to make a decision about what an appropriate placement is. That answer then suggests to me that the earlier FAPE proceeding does not preclude the instruction that she sought in this proceeding. Is that right? Yes, Your Honor. Had the district evaluated the student and offered placement, the parent could have requested a due process hearing challenging whether that placement provided FAPE if it did not include the three high school classes that she desired. Let me ask you this. As a practical matter, what was the school district being asked to provide, and how hard would it have been for the school district to do it? I mean, here we are, lots of lawyers, lots of money, over something that seems to me that the school district, had it chosen to do so, could have provided fairly easily. I'm trying to figure out why wasn't this case settled a long time ago? What the parent was asking the school district to provide is not necessarily what the IDEA requires the school district to do. And that's why the district can simply rubber stamp the parent's request. That's why cases are settled. Sometimes there's a disagreement between the parties as to who's entitled to what and how much and so on. But when the cost of litigation is a million dollars and the cost of compliance with a request is 50 cents, you settle. Now, those aren't the numbers, of course, but what I'm saying is we've had an awful lot of lawyer time put into this when the request seems to me fairly small. Your Honor, the district wouldn't want to pay 50 cents and serve a student poorly. The district's obligation under the IDEA is to offer, to fully evaluate a student and offer a placement that provides a free and appropriate public education. It can't shortcut that just to give the parent something she wants. Are you saying that what the parent was asking for would not have been helpful to the student or would have been harmful for the student? That is what the ALJ ruled in the case requested by the parent, yes, that the district's offer that did not include those three high school classes was a free and appropriate public education. But that's not, no, that wasn't my question. My question is, would the classes that the parent sought here have been harmful for the student? Would they have provided no benefit to the student? The parent clearly seems to think that they would have done. That's a different question from whether or not the community college option that was offered was a FAPE. And Your Honor, we don't know the answer to that question because that answer is something that would be determined through an initial evaluation. Has there been any settlement attempt through our mediation, in this court's mediation? Your Honor, this parent is a frequent litigant who has raised this issue in a variety of forums over the past year. That's not my question. Has there been any attempt to engage the services of our mediation in this court? Given the district's numerous attempts to resolve things with this parent in many forums over the previous few years, engaging in the mediation process in this circuit did not appear that it would be productive. And has there been a request by either side to do that, to engage our mediation services? No, Your Honor. Okay. If there's no further questions, thank you, Counsel. Thank you. Rebuttal? Thank you, Your Honor. Just a couple of quick points. On this collateral estoppel argument, I mean, as I mentioned, the request to FAPE was there. It was raised in her briefing before the AOJ. It was never— Counsel, just to be clear, it's not some—I don't know that any of us think like a strict collateral estoppel. I just—and I guess I kind of raised this—it's just more that it does seem like you do have a collateral proceeding that found that this thing that the district was proposing would provide a FAPE. And I think Judge Fletcher is right that that doesn't necessarily mean the other thing wouldn't have also provided a FAPE. I don't—I guess maybe it's got to be true that different things could provide a FAPE, right? But it does seem a little odd that like we would—your whole, this is not moot, is you could send it back and the district could reach a conclusion—I mean, the AOJ could reach a conclusion that this person was not provided or offered a FAPE, I guess, right? And that's hard to me to see how that seems like it would be inconsistent with the conclusion that they would have been—that the student would have been provided a FAPE. Yeah, I don't think so, Your Honor. I think the concession we just had from opposing counselor to Judge Fletcher's question is critical then, which is that, you know, if she came for, you know, she withdrew her student and then asked for something new, a different kind of FAPE, and if that had then been denied, she could have gone for a due process hearing and asked for FAPE then, and they conceded that would be fine. And she could be entitled to that thing which she was asking for, which was new, i.e., the three services in the context of a homeschool education. So it can't be the fact that once they've previously offered one kind of FAPE, then like they have this argument that any other thing, they just don't have to do anything anymore, you know? And I think that was— But they don't need to have—they don't need to—they don't need to show that every other thing would not be a FAPE. They just need to show that what they offered was a FAPE, it seems like, right? Like, I mean, is that—am I missing something? I just think we're in a new phase of the case, and in this phase of the case, she's asking for something completely different. And in this phase of the case, I think that we just had a concession that if she was denied that for an impermissible reason, something that violated the IDA, she could go and ask for a due process hearing about that. And in any event, I think this probably—at least the way in which it would all play out is as a collateral estoppel argument because, you know, this court is still capable of ordering relief in the form of compensatory education. So I don't think it's a mootness jurisdictional issue, and they haven't ever raised a collateral estoppel argument. I just have one sort of minor question. If you were to prevail here, or if we were to conclude that the district's demand for an interview was unreasonable, there was an unreasonable need for it, what would happen on remand? I think it's discretionary and compensatory education, you know, one thing could be a remand. It could go back to the district court because the district court didn't decide it. Right. I think it would certainly go back to the district court, and then probably it's in this as a factual, you know, hearing to figure out whether, in fact, the treatment was reasonable. Or it could say, at this point in the case, you know, certainly what's happened here is, you know, it's three and a half years on, she's only asking for 100 hours of instruction, you know, compensatory education might be warranted because, in the very least, there wasn't any cogent and responsive explanation that was given by the school district and drew that itself as an IDA violation. So I think there's a range of things that could happen on remand, but I do think that this is, you know, just to go to the fundamental question of why is this case here, I don't really know, Your Honor. It's 100 hours of instruction, she wanted three classes, 25 weeks, four hours a week. It's really extraordinary that we're here at this point. I have one further question, which is, well, now I forget what my first question was, so do either of my colleagues have? Just to pin this down, so what's at stake here is 100 hours of education at the high school and in several subjects, is that, that's what the, that's the sticking point? That is the last thing she asked for at ER 29 and before the district court. Maybe it'll be slightly different now, but that's the level of thing that she was asking for, and exactly, that's been the sticking point. And it's obviously outside the record what the settlement negotiations are, Your Honor, but my understanding is that my client has been willing to engage in settlement negotiations, so just to the extent that it was suggested otherwise, that's not my understanding. I say it again, your client has what about that? Has been willing to engage in settlement negotiations, that's my understanding. I remember what my question was. So the question was, you heard me ask on the other side about, it's not, it doesn't look like the school district necessarily flat out said you have to do an interview once they heard about the concerns about this past traumatic experience. Is that, what's your position on the fact that the school district did say, well, here, let's send us the medical records, we'll talk to our psychologist or something to that effect? Well, the only thing they said is send us the medical records, but before they didn't have any, didn't follow up on that at all, and instead what they did is went to the AOJ and asked for... Well, their position is the parent never followed up. I mean, they asked for the medical records, they never got them. I mean, I think it's a factual question as to who followed up and didn't follow up, but what we know is it's not like this situation where the parent kind of jumped the steps and went to court and asked for something. This is the extraordinary situation where the school district uses this unusual consent override procedure in the middle of the discussions and says, specifically in its request for relief, we want the September 18th prior written notice imposed, and they got that order from the AOJ, and that has the interview requirement as part of it. In fact, it describes the assessment as the interview. And if you look at their own evidence in this case before the AOJ, so if you look, for example, at SER 38, this is the Valaket Declaration, she describes the age-appropriate transition assessment as the interview. She says, an age-appropriate transition assessment involves getting to know the student through testing and conversation. In conducting the assessment, I typically ask questions related to the student's dream job and how they— Counselor, we're familiar with that. I think either of my colleagues have any further questions? No, thank you. All right. Thank you, counsel. Thank you to both sides, and thank you for taking this case pro bono. It's a great service. And we'll move on to the next case.
judges: FLETCHER, PAEZ, VANDYKE